James S. FERGUSON and Shirley M.
Ferguson, his wife,
Plaintiffs-Respondents,

v.

ALFRED SCHROEDER DEVELOP-
MENT CO., Defendant-Appellant.

No. 46232.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 6, 1983.

Charles W. Niedner, St. Charles, for de-
fendant-appellant.

Phillip T. Ayers, St. Ann, for plaintiffs-
respondents.

GEORGE M. FLANIGAN, Special Judge.

Plaintiffs James S. Ferguson and Shirley
M. Ferguson, husband and wife, brought
this action against defendant Alfred

Schroeder Development Company, based on structural defects in a new house which plaintiffs purchased from defendant, the builder-seller. A jury awarded plaintiffs $9,000 and defendant appeals from the ensuing judgment.

Defendant's first point is that the petition is insufficient to state a claim upon which relief can be granted. Defendant's second point is that the trial court erred in giving Instruction 5, plaintiffs' verdict-directing instruction. Defendant advances the same argument in support of both points. That argument is that "the implied warranty of fitness for a *particular purpose* is not applicable to a cause of action arising out of the sale of a house." For the reasons which follow, this court holds that the petition was sufficient and that there was no prejudicial error, on any ground assigned by defendant, in giving the instruction.

In its landmark opinion in *Smith v. Old Warson Development Company,* 479 S.W.2d 795 (Mo. banc 1972), the supreme court held that "implied warranties of merchantable quality and fitness exist in the purchase of a new home by the first purchaser from a vendor-builder." The case involved latent structural defects. The court also held: Implied warranties of "merchantable quality" and "reasonable fitness for use" are derived from the common law; the doctrine of implied warranty may be utilized to recover the difference between the value of the product as warranted and its actual value; reasonableness of quality or fitness is essentially a fact issue for the jury although, of course, there must be sufficient evidence to justify a finding of lack of reasonable quality and fitness; the builder-vendor is not required to construct a perfect house; the test is one of reasonableness of quality; the duration of liability is also premised on a standard of reasonableness.

■ When a challenge to the sufficiency of a petition is made for the first time on appeal, "the pleading will be held good unless it wholly fails to state a claim.... In this determination, the petition will be liberally construed...." *Fallert Tool & Engineering Co. v. McClain,* 579 S.W.2d 751, 756[8] (Mo.App.1979). Under Missouri practice, no technical forms of pleadings are required and the averments must be simple, concise and direct. A petition must contain a short and plain statement of the *facts* showing that the pleader is entitled to relief, together with a demand for judgment. See Rules 55.04 and 55.05.[1]

The allegations of the petition included those set forth in the next three paragraphs.

Defendant is engaged in the development and building of subdivisions and residences. On July 23, 1975, plaintiffs, as buyers, and defendant, as seller, entered into a written contract for the sale of a "single family residence." The contract, entitled "Construction Contract" and incorporated in the petition, described defendant as "builder." It provided for the sale of "certain real estate and property" situated on a certain lot in a subdivision in St. Charles, Missouri, "being a three-bedroom brick veneer dwelling with an attached two-car brick veneer garage, being or to be erected on said lot...."

On September 5, 1975, plaintiffs paid defendant the purchase price and received the deed. Defendant knew that plaintiffs would use the premises as a family residence and defendant impliedly warranted that the residence was constructed in a skillful and workmanlike manner and was free from defects in workmanship and materials. Plaintiffs relied upon defendant's skill and judgment and on the implied warranty. The residence was not suitable or fit for such purpose in that the foundation was so constructed as to allow water to enter the basement and accumulate on the basement floor, two doors were improperly installed so as to allow water to enter the residence, the garage floor cracked and settled and allowed water to collect and interfered with plaintiffs use of the garage, and

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to stat-   utes are to RSMo 1978, V.A.M.S.

the driveway and front walk cracked and settled.

Plaintiffs on numerous occasions, within a reasonable time after discovery of the breach of warranty, notified defendant of the defects. The conditions have worsened and the residence is unfit to live in. The value of the residence in its defective condition was $25,000 less than its value as impliedly warranted. The prayer was for judgment in the amount of $25,000.

Defendant, in its argument in support of its first point, does not specify any factual allegation which should have been included. Defendant merely says, "Plaintiff sued defendant on a theory of breach of implied warranty of fitness for a particular use.... The appropriate cause of action should have been one for breach of the implied warranty of habitability."

■ The facts pleaded in the petition were sufficient to support a claim for relief under the *Old Warson* doctrine. Defendant's first point has no merit. Indeed this court surmises, from the overall tenor of defendant's brief, that defendant places its primary reliance upon its second point and advances its first point subsidiarily.

Defendant's second point challenges plaintiffs' verdict-directing instruction, Instruction 5, which reads:

"INSTRUCTION NO. 5

Your verdict must be for plaintiffs if you believe:

First, defendant sold the single family residence having a mailing address of 3117 Fox Hill Road, St. Charles, Missouri, and

Second, defendant then knew or should have known of the use for which the single family residence was purchased, and

Third, plaintiffs reasonably relied upon defendant's judgment that the single family residence was fit for such use, and

Fourth, when sold by defendant, the single family residence was not fit for such use, and

Fifth, within a reasonable time after plaintiffs knew or should have known the product was not fit for such use, plaintiffs gave defendant notice thereof, and

Sixth, as a direct result of such single family residence being unfit for such use, plaintiffs were damaged."

Instruction 5 was based on MAI 25.03 [1980 revision]—"Breach of Implied Warranty of Fitness for a Particular Purpose Under Uniform Commercial Code." Defendant's criticism of the instruction is that "the appropriate instruction model" is MAI 25.08 [1980 new]—"Breach of Implied Warranty of Merchantability Under Uniform Commercial Code."

MAI 25.03 stems from § 400.2–315 and MAI 25.08 stems from § 400.2–314. Those two statutes are of course a part of the Uniform Commercial Code. Sec. 400.2–314 deals with an implied warranty of merchantability and, as applicable here, goods to be merchantable "must be at least such as are fit for the ordinary purposes for which such goods are used." Sec. 400.2–315 provides: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods there is unless excluded or modified under section 400.2–316 an implied warranty that the goods shall be fit for such purpose."

■ The case at bar, which arises from the sale of a new, but latently defective, house and lot by the builder-vendor to the original occupants, is outside the U.C.C., and specifically outside § 400.2–315 and § 400.2–314 because those statutes pertain to the sale of "goods," as that term is defined in § 400.2–105, and that definition does not encompass a new house and lot. "Real estate transactions, except for fixtures in relation to secured transactions, are not covered by the [U.C.C.]." 15A Am. Jur.2d Comm.Code, § 2, p. 457.

In view of the fact that MAI does not contain "an instruction applicable in [this] particular case," Rule 70.02(e) comes into play. That rule reads: "Where an MAI must be modified to fairly submit the issues

in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts."

Before Instruction 5 is discussed, it is in order to compare MAI 25.03 with MAI 25.08 in light of their respective statutory sources. MAI 25.03 requires six findings and MAI 25.08 requires only five findings. Although there are some language differences between the two instructions, findings numbered 1, 5 and 6 of MAI 25.03 are, for present purposes, substantially the same as findings numbered 1, 4 and 5, respectively, of MAI 25.08.

Findings 2, 3 and 4 of MAI 25.03 read:

"Second, defendant then knew or should have known of *the* use for which the (describe the article or product) was purchased, and

"Third, plaintiff reasonably relied upon defendant's judgment that the (describe the article or product) was fit for *such* use, and

"Fourth, when sold by defendant, the (describe the article or product) was not fit for *such* use, and . . ." (Emphasis added.)

The foregoing findings of MAI 25.03 should be compared with findings 2 and 3 of MAI 25.08, which read:

"Second, when sold by defendant (describe the article or product) was not fit for *one of its ordinary purposes,* and . . .

"Third, plaintiff used such (describe the article or product) for such a purpose, and . . ." (Emphasis added.)

As their respective captions reflect, MAI 25.03 concerns itself with the breach of an implied warranty of fitness for a particular purpose while MAI 25.08 deals with the breach of the implied warranty of "mer-

chantability," and that in turn involves fitness for ordinary purposes. The distinction is discussed in U.C.C. Comment 2 following § 400.2–315 as set out below.[2]

▉ The implied warranty, which arises from an *Old Warson* situation, is "closely analogous" to that found in § 400.2–314, which is an implied warranty of merchantability. *Crowder v. Vandendeale,* 564 S.W.2d 879, 880 (Mo. banc 1978); *O'Dell v. Custom Builders Corp.,* 560 S.W.2d 862, 870 (Mo. banc 1978). The court in *O'Dell* pointed out that both the common law warranty and the statutory modification thereof contained in § 400.2–314 "require that the product be reasonably fit for the *ordinary* purposes for which it is used." (Emphasis added.) That being so, there is some merit in defendant's contention that MAI 25.08 is preferable to MAI 25.03 as a general guide for a draftsman who is preparing a verdict-directing instruction based on the doctrine of *Old Warson.* It does not follow, however, that defendant has demonstrated that the trial court committed prejudicial error in giving Instruction 5.

Defendant does not claim that the evidence was insufficient to support the giving of Instruction 5. Defendant does not direct any specific complaint to the language of Instruction 5. Defendant does not point out any factual element of plaintiff's claim which Instruction 5 fails to submit. It may well be that Instruction 5 could have been better worded. For example, paragraph First might have required a finding that the sale was to plaintiffs. Defendant's answer, however, conceded that fact and thus no error would arise from the failure of the instruction to require that specific finding even if defendant had challenged it on that ground. *Cline v. Carthage Crushed Limestone Company,* 504 S.W.2d 102, 112[6] (Mo.

2. "2. A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

"A contract may of course include both a warranty of merchantability and one of fitness for a particular purpose."

1973). There was no real contest about the fact that the defects here were latent, so any claim that the instruction should have required a more specific finding of latency would have been unavailing. It was also uncontested that plaintiffs were the original occupants of the new house.

The comparison of MAI 25.03 with MAI 25.08 demonstrates that in patterning their instruction on MAI 25.03 the plaintiffs assumed a greater burden than if they had used MAI 25.08 as their general guide. MAI 25.03 requires a finding of plaintiffs' reliance while MAI 25.08 does not. "One may not complain of an instruction placing too great a burden on his adversary." *Curators, Etc. v. Neb. Prestressed Concrete,* 526 S.W.2d 903, 912 (Mo.App.1975). In *Lieber v. Bridges,* 650 S.W.2d 688 (Mo.App.1983), a case involving an *Old Warson* situation, the plaintiffs used MAI 25.08 as the verdict-director. The court pointed out that if the submission had been under the implied warranty of fitness for a particular purpose, such would involve "the more difficult showing of whether the builder had knowledge of the particular purpose for which the building was to be used and whether the building in fact lived up to such a purpose."

It is true that MAI 25.03 concerns itself with a "particular purpose" and MAI 25.08 concerns itself with "one of its ordinary purposes." The claim by defendant that Instruction 5 was too "particular" in describing plaintiffs' use of the house and lot is invalidated by an examination of the instruction itself which is couched in most general terms. Indeed it might be argued that the instruction is not specific enough, but defendant does not do so.

In *Eckert v. Dishon,* 617 S.W.2d 649 (Mo. App.1981), which seems to have involved an *Old Warson* situation, the court said: "MAI 25.03 is the applicable instruction to the instant proceedings." In *Sands v. R.G.*

*McKelvey Bldg. Co.,* 571 S.W.2d 726 (Mo. App.1978), which did involve an *Old Warson* situation, the court in dictum said that MAI 25.03 "may be appropriate." [3] The instant holding is not inconsistent with those cases for here the plaintiffs did use MAI 25.03. This court holds that such use did not constitute prejudicial error in light of the nature of the complaint which defendant has leveled. Defendant's second point has no merit.

The judgment is affirmed.

SMITH, J., and RICHARD J. MEHAN, Special Judge, concur.

---

**3.** In *Stegan v. H.W. Freeman Const. Co., Inc.,* 637 S.W.2d 794 (Mo.App.1982), in an *Old Warson* situation, the plaintiff's verdict-directing instruction was patterned on MAI 25.03. It did not, however, contain paragraph Fifth of MAI 25.03 dealing with giving defendant notice. The instruction was not attacked on that ground. A similar situation arose in *Matulunas v. Baker,* 569 S.W.2d 791 (Mo.App.1978), and again the content of the instruction was not attacked. As to the necessity for a finding of notice see *Major v. Rozell,* 618 S.W.2d 293, 296 (Mo.App.1981) and *Crowder v. Vandendeale,* 564 S.W.2d 879, 881 (Mo. banc 1978).